NEW ORLEANS WATER-WORKS Co. *v.* SOUTHERN BREWING, Co. SAME
*v.* PEOPLE'S ICE CO. SAME *v.* McGINNIS OIL & SOAP WORKS.[1]

(*Circuit Court, E. D. Louisiana.* June 7, 1888.)

COURTS—FEDERAL COURTS—FOLLOWING STATE DECISIONS.
In *Water-Works Co.* v. *Refinery Co.*, 35 La. Ann. 1111, the supreme court of
Louisiana held that in spite of the charter of the water-works, giving that
corporation the exclusive privilege of supplying water from the Mississippi to
the city and its inhabitants, and reserving to the city council the power to
grant persons contiguous to the river the privilege of laying pipes for his own
use, the council, under said charter and the general laws of the state, could
grant such privilege to persons without regard to their contiguity. In this de-
cision the United States supreme court held that no federal question was in-
volved, the determination of the council's power, under the state laws, being
for the state supreme court, (8 Sup. Ct. Rep. 741.) Before this ruling, but
after the state decision, the United States supreme court, in the case of *Water-
Works Co.* v. *Rivers*, 6 Sup. Ct. Rep. 273, without referring to the state decision,
held that the council's grant of such privilege under the provision of the state
constitution adopted after the water-works charter had been granted, which
abrogated monopolies, impaired the obligation of the state's contract with the
company. *Held*, that the United States circuit court in Louisiana should be
governed by the decision of the state supreme court, the matter being, as con-
ceded by the United States supreme court, one for its determination, and the
parties being all of them Louisiana corporations. BILLINGS, J., dissenting.

In Equity. Final hearing on injunction.
*J. R. Beckwith*, for complainants.
*A. Goldthwaite* and *W. S. Benedict*, for defendants.
Argued before PARDEE and BILLINGS, JJ.

PARDEE, J. Assuming that the questions arising under the constitu-
tion, upon which our jurisdiction rests, are to be decided in favor of the
complainant, there remains the question of construction of complainant's
charter, and the general laws of Louisiana with reference to the right of
the city of New Orleans through its council to grant licenses or permits
to the defendants to lay pipes in and across the public streets to their re-
spective establishments for the sole purpose of supplying themselves re-
spectively with water from the Mississippi river. In the case of *Water-
Works Co.* v. *Refinery Co.*, 35 La. Ann. 1111, this question of the author-
ity of the city of New Orleans under the complainant's charter and the
laws of the state was presented to the supreme court of the state of Louis-
iana, and was decided in favor of the right. It is true that in the case
the refining company. among other defenses to the suit, set up that it
was a contiguous person to the Mississippi river, and therefore within
the letter of the proviso in the eighteenth section of complainant's char-
ter, but the court wholly ignored the contiguity defense, and based its
judgment wholly upon the general law of the state, and upon the con-
struction and effect of the charter from the legislature to the water-works
company, and of the license from the city council to the refining com-
pany, and in no degree upon the constitution or any law of the state sub-

[1] Publication delayed by inability to obtain copy of opinion at time of delivery.

sequent to the water-works charter. The case was carried by writ of error to the supreme court of the United States, and there dismissed for want of jurisdiction; the court deciding that no federal question was involved, the right of the city of New Orleans to grant the license complained of being wholly a question to be decided under Louisiana law. See 8 Sup. Ct. Rep. 741. The decision of the supreme court of the state was rendered in 1884. In 1885 the precise question was before the supreme court of the United States in the case of *Water-Works* v. *Rivers*, and was then decided in favor of the water-works company, the court holding that an exclusive franchise granted to supply water to the inhabitants of a municipality by means of pipes and mains laid through the public streets is violated by a grant to an individual in the municipality of the right to supply his premises with water by means of pipes so laid. Although the case of the *Water-Works Co.* v. *Refinery Co.* was then pending on a writ of error, and the counsel for the refining company submitted a brief in the *Rivers Case*, in the decision no reference whatever is made to the decision of the supreme court of Louisiana upon this very question, conceded to be not a federal question, but one wholly depending upon local Louisiana law. See *Water-Works Co.* v. *Rivers*, 115 U. S. 674, 6 Sup. Ct. Rep. 273.

The question is thus squarely presented whether, in a matter involving solely Louisiana law, where no property rights under former decisions are involved, this court should follow the decision of the highest court of the state or the decision of the supreme court of the United States. This same question was presented to the supreme court of the United States in the case of *Fairfield* v. *County of Gallatin*, 100 U. S. 47. In 1874, in the case of *Railroad Co.* v. *Pinckney*, 74 Ill. 277, the supreme court of the state of Illinois gave a certain construction to a provision of the constitution of the state. About one year afterwards, in *Town of Concord* v. *Portsmouth*, 92 U. S. 625, the same constitutional provision came before the supreme court of the United States, and received a contrary construction, the case of *Railroad Co.* v. *Pinckney* not being called to the attention of the court. In *Fairfield* v. *County of Gallatin, supra*, the same question was again brought before the supreme court of the United States, the defendant in error relying upon, and the court below having followed, *Town of Concord* v. *Portsmouth, supra*, and it was then held, reversing the circuit court, and citing *Polk's Lessee* v. *Wendal*, 9 Cranch, 87; *Nesmith* v. *Sheldon*, 7 How. 812; *Walker* v. *Commissioners*, 17 Wall. 648; *Elmendorf* v. *Taylor*, 10 Wheat. 152; *Green* v. *Neal's Lessee*, 6 Pet. 291; *Leffingwell* v. *Warren*, 2 Black, 599; *Sumner* v. *Hicks*, Id. 532; *Olcott* v. *Supervisors*, 16 Wall. 678; and *State Railroad Tax Cases*, 92 U. S. 575,—that it is the general rule of decision to follow and adopt the decisions of the state courts in the construction of their own constitution and statutes when that construction has been settled by the decisions of its highest tribunal; and that this rule of decision is to be followed even where the supreme court of the United States has given a different construction to the state law, provided no rights are affected which have been acquired under their former decisions. See, also, *Suydam* v. *Williamson*, 24 How. 427. To

the above general rule there are exceptions, *i. e.*, where rights of property have been acquired under former decisions of either the state or federal courts; where on the same transactions the federal court has first passed, and the decisions of the state court relied upon do not meet the independent judgment of the supreme court of the United States; and when general questions of commercial law are involved.    See *Pease* v. *Peck*, 18 How. 595; *Morgan* v. *Curtenius*, 20 How. 1; *Thompson* v. *Perrine*, 103 U. S. 606; *Douglass* v. *County of Pike*, 101 U. S. 677; *Oates* v. *Bank*, 100 U. S. 239; *Burgess* v. *Seligman*, 107 U. S. 20, 2 Sup. Ct. Rep. 10.    In *Pease* v. *Peck*, and in the last cited case, it is intimated that the general rule should lose some of its rigidity in cases involving controversies between citizens of different states.

In the cases now under consideration the parties complainant and defendant are corporations deriving life entirely from the laws of Louisiana, and these causes are apparently brought in this court as arising under the constitution of the United States, when the real question in issue is one not federal, but arising solely in relation to the proper construction to be given to Louisiana laws, and where, if it is not the sole object, the main purpose is to escape the construction given by the supreme court of Louisiana to the laws of the state.    Heretofore, in these cases on motions for injunctions *pendente lite*, where the main question argued was whether the complainant's monopoly had been extinguished by the fact that the complainant had procured and accepted remedial legislation under the present constitution of the state, (see Const. 1879, arts. 234, 258,) and considering that under the charter to complainant the city was limited in granting permits to persons actually contiguous to the river, and that such contiguity was a question for the court to determine, we have followed the *Rivers Case*, and granted temporary injunctions in those cases where more than public ground separated the parties from the river. But now it seems that in the courts the question of contiguity cuts no particular figure, but is decided by the city council when they grant or refuse a permit.    In the *Rivers Case*, as interpreted by the supreme court in *Water-Works Co.* v. *Refinery Co.*, *supra*, it was not in issue, and in the supreme court of the state the defense of contiguity was wholly ignored. It can easily be inferred from a close examination of the *Rivers Case* that the only questions there intended to be decided were whether the monopoly granted complainant in its charter was abrogated by the state constitution, and whether the city of New Orleans could make the grant to Rivers by reason of such abrogation; and that the question whether, under a fair construction of complainant's charter and the general laws of the state, the city had the right to grant a license to a citizen to lay pipes to the river to supply himself with water for his private needs, was not at all considered.    In a matter so important to the public, and where the action of the city council of New Orleans cannot be restrained, uniformity in the jurisprudence which determines the value of the permits or licenses granted is very desirable, and the rights of the party who receives a license should not wholly depend upon the selection made by the water-works company of the court (state or federal) to hear the cause.

This desirable uniformity is better attained by following the long line of decisions of the supreme court of the United States declaring that the federal courts should adopt and follow the decisions of the highest court of the state in the construction of its own constitution and statutes, than in following one decision of the supreme court on what is now conceded not to be a federal question. As these cases are now presented to the court, and upon final hearing, I am of the opinion that decrees should go for the defendants.

BILLINGS, J., (*dissenting*.) Complainant submits as his case that by the legislative action of the state the obligation of his contract is impaired. In such a case I understand the supreme court of the United States recognizes it as the constitutional mandate that that court shall by its own judgment interpret the contract, and decide as to its being impaired. This, therefore, is not a case where the construction of a charter by the court of last resort of a state is necessarily a part of the charter, and conclusively binding. The federal court must still measure the obligation and the effect of the hostile legislation. *Jefferson Branch Bank* v. *Skelly*, 1 Black, 436, 443. In the case of *Water-Works Co.* v. *Rivers*, 115 U. S. R. 674, 681, 6 Sup. Ct. Rep. 273, the supreme court have construed this charter in respect to the point here involved While I agree with the circuit judge that the construction by the state supreme court is contrary to that by the United States supreme court in the *Rivers Case*, and that with reference to every other class of cases the construction of a charter by the state court of last resort would be obligatory upon the United States supreme court, and upon this court, I nevertheless think that the views of the supreme court in the *Rivers Case* should still control the action of this court as to the meaning of the charter already declared by it, and that the complainant should have a decree perpetuating the injunction.

As to the meaning of the expression "contiguous persons." Contiguous may have so broad a meaning as to make it proper to speak of the entire city of New Orleans as contiguous to the Mississippi river. This is not the meaning. The use of the word compels us to stop somewhere. There is no middle point. I think the word was meant, in the charter, to include only the proprietors who are actually riparian; that is, only those proprietors whose land by actual contact adjoins the river.