THE PEOPLE *ex rel.* CIVIC RESTAURANT, INC., Plaintiff-Appellee, *v.* WILLIAM T. PRENDERGAST *et al.*, Defendants-Appellants.

(No. 53546; )

First District—October 23, 1970.

*Rehearing denied January 6, 1971.*

Raymond F. Simon, Corporation Counsel, of Chicago, (Marvin E. Aspen and Joseph N. Lascaro, Assistants Corporation Counsel, of counsel,) for appellants.

Gerald B. Mullin, of Chicago, for appellee.

Mr. JUSTICE TRAPP delivered the opinion of the court:

Defendants, William T. Prendergast, City Collector and Richard J. Daley, Mayor, of the City of Chicago, appeal from a judgment awarding

a writ of *mandamus* requiring defendants to issue a food dispenser's license and a tobacco dealer's license to plaintiff, Civic Restaurant, Inc.

The petition alleged that Civic Restaurant, Inc., made application on December 6, 1967, on the proper form and tendered the proper fees to the City Collector; that the premises at 203-207 North La Salle Street are presently licensed to petitioner; that the City Collector refused to accept the application and fees; that the refusal was based upon an order by the Mayor determined upon without notice or hearing; that no opportunity for hearing has been afforded; that the action is in violation of Article II, § 2 of the Illinois Constitution and the 14th Amendment to the Constitution of the United States in depriving petitioner of property without due process and in denying petitioner equal protection of the law. The constitutional issues are not presented in the briefs and arguments filed.

Defendants' answer stated that the applications were returned by letter which stated in part:

"A question having arisen concerning the issuance of these licenses, it is necessary that your representative call at this office in person with relation thereto.

It is suggested that he ask for Mr. Goss at that time."

The answer further stated that the City Collector refused to accept the applications upon stop order of the Mayor; that no notice or hearing is required; that the Mayor refused the issuance of the licenses for good cause as provided in § 101.27 of the Municipal Code; that the privilege of operating a restaurant is not a property right and no constitutional rights have been violated.

The answer further specifically alleged George Kamberos, president, Harry Rosen, secretary, and Raymond Lowry, are not the true owners of the corporation and that one Morris Saletko is the owner and the individual who actually conducted the restaurant at the location for which the licenses are sought; that Civic Restaurant, Inc., George Kamberos, Harry Rosen and Raymond Lowry, officers of the corporation, were indicted by the Federal Grand Jury for conducting a retail liquor business on the premises without paying the required federal tax; that Morris Saletko had been found guilty in the Federal Court of the Northern District of Illinois on June 27, 1967, of conspiracy to transport goods stolen in interstate commerce; that Morris Saletko, George Kamberos, Harry Rosen and Raymond Lowry are not of good character and reputation and not qualified to have any license from the City of Chicago; that a proceeding to revoke petitioner's liquor license is pending before the local Liquor Control Commissioner; that the City of Chicago Code vests the Mayor with the authority to grant licenses; that the City Code

grants the Mayor authority to revoke any license where the licensee has violated the Code or any state statute.

Defendants, by amendment to the answer, alleged that the corporate authorities could license, regulate or prohibit all places of eating; that the City Code required a license to be posted in a conspicuous place; that petitioner has been operating a restaurant without a license; that between April 22, 1966, and June 30, 1967, petitioner operated as a tavern without paying the Retail Liquor Dealers Occupational Tax; that petitioner corporation and its officers are not the real owners of the business but hold the license as a subterfuge for Morris Saletko; that Morris Saletko is not of good reputation and character and would not be a qualified licensee; that petitioner operated as a corporation in Illinois after its authority was revoked by Court order of September 3, 1962.

George Kamberos testified that he bought the restaurant in July, 1961, from a Mr. Palmer for $17,000.00 cash, which he obtained from National Tea for a small grocery business he owned. He said he owns 18 of the 20 shares and he gave one share to the manager, Harry Rosen, and one share to Raymond Lowry. He stated that Morris Saletko had no ownership and worked as a cashier for $60.00 per week. He stated that for each year from 1961 through 1967, the corporation was issued a license to do business. He testified that Saletko was working at the H & H Restaurant, at 186 North La Salle Street in 1961, that the building was coming down, that Saletko came to work for him in 1961, and that he did not know whether Saletko owned any interest in H & H Restaurant.

The manager, Rosen, testified that he thought the applications were signed by Kamberos, that he gave the applications and checks to Saletko, that evidently the applications were not signed by Kamberos, that when Saletko got the licenses he got them in his own name as a transfer from H & H Restaurant, which Rosen believed Saletko had owned. Rosen said Saletko told him he was going to come to work for the restaurant, that he was going to transfer the license from the H & H, that he discussed the matter with Kamberos and that he assumed it was done with Kamberos' permission. He further testified that the licenses were on the wall of the restaurant near the cash register, but that he never looked at them. Sometime in May of 1966, after Kamberos learned that Saletko was indicted, Kamberos ordered Rosen to get the license put in the name of Civic Restaurant. He said it was at the time of the indictment that he learned the license was in Saletko's name. He also stated that he never looked at the licenses on the wall of the restaurant, and he never read them.

In fact, Civic Restaurant, Inc., did not have a food dispenser's license or a tobacco dealer's license from 1961 through part of 1966, and, in fact,

during this time the license for the location was in the name of Saletko.

Charles T. Callahan of the enforcement department of the Alcohol and Tobacco Tax Division of the United States Treasury testified that fied that on June 20, 1967, he made an investigation as to whether the restaurant had a current Federal Tax Stamp, that neither the manager nor the accountant could find it, that he personally checked the records and the restaurant failed to pay the tax for six or seven years. The restaurant later paid the tax and penalty amounting to about $600.00.

Walter Ruane, employee of the City Collector, testified that in May of 1968, the restaurant was operating without a license. Charles Bradley, a policeman, testified to the same effect.

Lawrence J. Goss, employed by the City Collector, testified that he advised the one who came to see him pursuant to his letter that the applicant would have to see the Mayor.

■■ Defendants contend that the judgment must be reversed because plaintiff did not allege and prove a demand upon, and a refusal by, the mayor in respect to the licenses and rely upon *Murphy v. City of Park Ridge*, 298 Ill. 66, 72; 131 N.E. 256; *People ex rel. Rinard v. Mount Morris et al.*, 137 Ill. 576; 27 N.E. 757; *People ex rel. Edelman v. Hunter*, 350 Ill.App. 75; 111 N.E.2d 906; *People ex rel. Hollie v. Chicago Park District*, 296 Ill.App. 365; 16 N.E.2d 161. We think, however, that the pleadings and testimony clearly disclose the fact that defendants would not have issued the licenses upon demand The answer clearly states that the Collector's refusal was for good and sufficient cause. We think that under the principle of *People v. McKibbin*, 377 Ill. 22 at 24; 35 N.E.2d 321, and *People v. McKibbin*, 380 Ill. 63 at 67; 43 N.E.2d 550, the allegations and proof were sufficient in this regard.

■■ The trial court evidently took the view that the defendants, in order to justify the Mayor's action, were confined strictly to the reasons given to plaintiffs, and stated in the pleadings, for refusal of the license in a *mandamus* proceeding. The law is contrary to this view, and it is well established that petitioners have the burden of establishing a clear right to a writ of *mandamus*. (*Harrison v. People*, 124 Ill.App. 519.) The writ is not one of right and should not be used in doubtful cases. *People v. Dever*, 238 Ill.App. 255.

■■ The facts that Civic Restaurant, Inc. operated without a license in its name from 1961 to 1966, that it clearly operated without a license in 1968, that there was undisputed testimony that it did not pay a federal alcohol stamp tax for six or seven years made a *prima facie* case of ordinance and law violations that would bring it within § 101-27 of the City of Chicago Municipal Code. There is much to justify the assumption by the administrative officials in charge that the license was in

Saletko's name because he really operated it. Kamberos' explanation of his lack of knowledge that the license was in Saletko's name for a number of years is not persuasive. In a *mandamus* proceeding where the evidence justifies the official action, the writ should be refused and the burden is rather on petitioner to establish the clear right than on the defendants to justify only by each specific reason given in the answer.

This court has held in reference to an ordinary retail soft drink license that the issuance of such a license involves official use of discretion. The discretionary aspect of issuing municipal licenses is not confined to the dram shop cases as contended by plaintiffs. In *People v. Dever*, 238 Ill.App. 255, one Julius Bunis had had his soft drink license revoked and leased the premises to a laborer who worked for a scrap iron dealer. He sent someone to apply for the license in the laborer's name. When a policeman investigated he found Bunis in possession operating without a license. The policeman reported that in his opinion Bunis was using the laborer's name as a subterfuge. The court said, p. 256:

"The writ of mandamus is not a writ of absolute right and should not be used in doubtful cases. (*People v. Blair*, 292, Ill. 139.) Nor can it be used to control or review the discretion of properly authorized city officials in the matter of issuing licenses unless there has been a clear abuse of that discretion. (*Harrison v. People*, 222 Ill. 150.) While such officials may not arbitrarily refuse to issue such a license, neither will they be compelled to issue one when in their discretion, reasonably and fairly exercised, it has been refused by them. *Harrison v. People, supra* 153.

No such abuse of discretion was shown in this case and therefore the judgment was erroneous and is reversed."

■■ The Illinois Supreme Court has stated that doubts as to discretionary authority must be resolved in favor of the administrative official. In *MacGregor v. Miller*, 324 Ill. 113 at 118; 154 N.E. 707, the court said:

"It is a well recognized rule that where the performance of an official duty or act involves the exercise of judgment or discretion the officer cannot ordinarily be controlled with respect to the particular action he will take in the matter, and where an officer, in the exercise of a discretionary power, has considered and determined what his course of action is to be, he has exercised his discretion, and his action is not subject to review or control by mandamus; *and so careful are the courts of encroaching in any manner upon the discretionary powers of public officials, that if any reasonable doubt exists as to the question of discretion or want of discretion they will hesitate to interfere, preferring rather to extend the benefit of the doubt in favor of the officer.* 18 R.C.L. 124."

We hold that the writ was improperly awarded. The judgment of the Circuit Court is reversed.

Judgment reversed.

CRAVEN, P. J., and SMITH, J., concur.